RANDY S. GROSSMAN
United States Attorney
OWEN ROTH
California Bar No. 335891
Assistant United States Attorney
Office of the United States Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
Tel.: 619-546-7710
owen.roth@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, ex rel., SAN DIEGO COMPREHENSIVE PAIN MANAGEMENT CENTER, INC., a California professional corporation; PACIFIC SURGICAL INSTUTE OF PAIN MANAGEMENT, INC. a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>JAYSEN EISENGREIN, an individual; SANDRA LOVE, an individual,<br><br>Defendants. | Case No. 22-CV-1648-BAS-WVG<br><br>**UNITED STATES' MOTIONS TO:**<br><br>**(1) INTERVENE; AND**<br>**(2) STAY PROCEEDINGS**<br><br>The Hon. Cynthia A. Bashant |

The United States moves to intervene in and to stay the proceedings in this civil case (the "Civil Case") pending resolution of the parallel criminal case docketed at *United States v. David James Smith et al.*, No. 22-CR-2842 CAB (the "Criminal Case").

## I.  INTRODUCTION

The Court should grant intervention and stay the Civil Case pending the outcome of the Criminal Case. The complaint here and the indictment in the Criminal Case both concern claims for reimbursement by San Diego Comprehensive Pain Management Center

("SDCPMC") and Pacific Surgical Institute ("PSI"). The complaint essentially alleges that defendants Eisengrein and Love have, through their positions at Qlarant, suspended reimbursements from Medicare to SDCPMC and PSI. In turn, the indictment alleges that Dr. David James Smith and Julia Ann Oertle – the principal and owner of these entities, and his long-time employee – have engaged in a long-running scheme to defraud Medicare. The complaint and the indictment thus both point up a common, central issue: whether the reimbursement claims are valid or the product of fraud.

The material common issues in the cases are based on much of the same evidence and witnesses. In both cases, documents pertaining to the validity of the reimbursement claims will likely play a central role. Examples of these documents include patient records, billing submissions, and communications between and among SDCPMC/PSI staff. Moreover, current and former staff and patients, doctors in the relevant medical community, and experts opining on substantially the same topics are likely to pertain to both matters. Given the overlap, it is appropriate to stay the Civil Case and permit the Criminal Case to continue. Doing so poses no unfair surprise to the plaintiffs, whose principals have been aware of the underlying criminal investigation for many months.

Proceeding now with the Civil Case will likely force a series of unacceptable and avoidable litigation dilemmas. Proceeding now will put key actors to choices between setting aside Fifth Amendment rights, or invoking those rights and risking adverse evidentiary inferences. Further, discovery in the Civil Case would likely turn into a one-sided affair if those actors invoke their Fifth Amendment rights. Plaintiffs could take affirmative civil discovery, but key witnesses (*e.g.*, Smith and Oertle) could stand silent when the civil defendants sought answers about fraudulent conduct in connection with SDCPMC and PSI. And, without a stay, plaintiffs could avoid the limitations on criminal discovery by using the Civil Case to pursue wide-ranging discovery through depositions, interrogatories, and third-party subpoenas. Given that the conduct, defendants, witnesses, and evidence substantively and materially overlap, the cases cannot realistically proceed independent of one another. Finally, staying the Civil Case (which seeks injunctions and

financial relief) and allowing the Criminal Case (in which liberty interests are at stake) to proceed will therefore save the Court, and the parties significant resources, while allowing for a full vetting of the allegations.

## II. STATEMENT OF FACTS

### A. The Civil Action

The complaint in the Civil Action alleges that defendants Eisengrein and Love have, through their roles at Qlarant, carried out "a fraud scheme" to "unfairly and fraudulently oppose claims for compensation by Medicare beneficiaries," presumably SDCPMC and PSI. Complaint ¶ 1. The complaint continues, "While there are genuine instances of health care fraud, waste and abuse which Qlarant has pursued, to sustain its existence on a massive scale, its executives target innocent medical providers and contrive allegations of fraud that have no basis in fact." *Id.* ¶ 3. Further, "Eisengrein, in conspiracy with Defendant Love and others, has presented or caused to be presented knowingly false or fraudulent written or oral material statements in opposition to a claim for compensation for the purpose of denying compensation." *Id.* As a consequence, the complaint alleges, SDCPMC and PSI have been defrauded within the meaning of California law.

### B. The Criminal Case

On December 13, 2022, a federal grand jury in this District returned an 83-count indictment against Smith and Oertle. *See* Dkt. No. 1, *United States v. Smith et al.*, 22-CR-2842 CAB (S.D. Cal.). Among other things, the indictment alleges that Smith and Oertle engaged in a scheme to defraud Medicare by submitting false and fraudulent reimbursement claims. *See* Indictment ¶ 24.

The indictment alleges that Smith was the owner and president of both SDCPMC and PSI, and that Oertle was his long-time employee who worked in a variety of roles. *Id.* ¶¶ 13, 14. The indictment further alleges that beginning no later than December 2017, Smith and Oertle began compounding fentanyl at SDCPMC, for use in patients who

3

received pain-management medicine via intrathecal pain pumps.[1] *Id.* ¶ 25. The indictment further alleges that Smith and Oertle caused false and fraudulent reimbursement claims to be submitted to Medicare for administrations of this fentanyl, on several grounds. First, the indictment alleges that Smith and Oertle inflated the reimbursement claims by 57 percent: they used one formulation when compounding the fentanyl, but then misrepresented to Medicare that they had used a different formulation that would call for 57 percent more. *Id.* ¶ 25. The indictment alleges that Smith and Oertle needlessly generated gross quantities of excess fentanyl and billed this excess as "wasted" fentanyl in their reimbursement claims. *Id.* The indictment also alleges that even after seeking reimbursement for this "wasted" fentanyl, Smith did not dispose of it, but had it saved and re-used improperly. *Id.*

In summary, the indictment alleges that Smith and Oertle unlawfully manufactured and distributed fentanyl to SDCPMC/PSI patients, adulterated the fentanyl, and both defrauded Medicare and made false claims by padding their billing, failing to disclose the circumstances of the compounding, and billing for drugs identified as "wasted" but then reused.[2] They are thus charged with a multi-object conspiracy to commit (i) healthcare fraud, (ii) false claims, (iii) unlawful manufacture and distribution of fentanyl, and (iv) adulteration of fentanyl; conspiracies to manufacture and to distribute fentanyl unlawfully; healthcare fraud; false claims; unlawful manufacturing of fentanyl; and adulteration of fentanyl. *Id.* Forfeiture allegations are also alleged, targeting (among other things) funds obtained from Medicare by the fraud. *Id.* ¶¶ 42–45.

---

[1] An intrathecal pain pump is a device that is implanted in the body that metes out pain-management drugs directly to the spine. Indictment ¶ 12.

[2] This summary description of the indictment has no control or force in the Criminal Case; the language of the indictment controls.

## III. ARGUMENT

### A. Intervention Is Proper Under Federal Rule of Civil Procedure 24

#### 1. Legal Standard

Under Federal Rule of Civil Procedure 24(a)(2), anyone may intervene in a case as of right in an action when the applicant "claims an interest relating to the . . . transaction which is the subject of the action" and "disposing of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless existing parties adequately protect that interest." Intervention as of right under Rule 24(a)(2) is analyzed under a four-part test:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (citation omitted). Courts apply "practical and equitable considerations" and construe the Rule "broadly in favor of proposed intervenors." *Id.* (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)). The "'interest' test" requires no "specific legal or equitable interest[,]" but instead "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). And the burden of showing inadequate representation is "minimal." *SEC v. Navin*, 166 F.R.D. 435, 441 (N.D. Cal. 1995).

The Court also may permit intervention under Federal Rule of Civil Procedure 24(b)(1)(B), when the applicant's "claim or defense . . . shares with the main action a common question of law or fact." A court may grant permissive intervention under Rule 24(b)(1)(B) if the application "shows (1) independent grounds from jurisdiction, (2) the motion is timely, and (3) the applicant's claim or defense, and the main action, have a

question of law or question of fact in common." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009). Further, Rule 24(b)(3) requires the Court to "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

Whatever the basis, "[i]t is well established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding which is anticipated or already underway that involved common questions of law or fact." *Bureerong v. Uvawas*, 167 F.R.D. 83, 86 (C.D. Cal. 1996) (quoting *SEC v. Mersky*, No. Civ. A. 93-5200, 1994 WL 22305, at *1 (E.D. Pa. Jan. 25, 1994)); *see also SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980). Courts have allowed the United States "to intervene in a civil case for the purpose of moving to stay discovery and other proceedings until the resolution of a related criminal case." *SEC v. Giguiere*, 18-CV-1530-WQH-JLB, 2018 WL 9516058, at *2 (S.D. Cal. Oct. 24, 2018).

### 2.   Intervention as of Right Is Justified Under Rule 24(a)(2)

The *Wilderness Society* considerations for Rule 24(a)(2) intervention justify granting the Government's motion.

This motion is timely. The United States is seeking to intervene at an early stage in this case, which still is at the pleading stage. *See SEC v. Sripetch et al.*, No. 20-CV-1864-H-AGS, 2021 WL 165012, at *3 (S.D. Cal. Jan. 19, 2021) (granting motion to intervene under Rule 24(b)(1)(B), and to stay SEC case, and noting that "the motion is timely because the civil action is still in the pleading stage with the parties having engaged in little, if any, discovery, and a trial schedule has not yet been set"). The case was removed to this Court on October 24, 2022, and the indictment returned on December 13. Per the Court's scheduling order, the parties to the Civil Case filed cross-motions for remand, and to dismiss, on November 18, 2022. Those motions are pending, but this is the only litigation that has occurred. No scheduling order has been entered, little or no discovery has been exchanged, no depositions have occurred, and no trial date has been set.

1  The United States further claims "significantly protectable" interests in the property or transaction that is the subject of the Civil Action. The Civil Action seeks to have Qlarant – in substance – disgorge funds to SDCPMC and PSI that the latter have claimed as reimbursement for service provided to Medicare patients. Those funds would be paid from Medicare trust accounts held by the Treasury Department; they are "strictly designated to pay for medical care that was received by the eligible beneficiary, for medically necessary services." Indictment ¶ 2. The Criminal Case alleges that Smith and Oertle have caused fraudulent reimbursement claims to be made to Medicare, and seeks (among other things) forfeiture and restitution of funds already paid. It naturally follows that the monies sought in the Civil Action are alleged to be based on fraudulent claims. The United States has a significant interest in protecting the Medicare fisc and prevent continued disbursements made through fraud.

Equally important for this motion, the United States claims a protectable interest in the discovery that could be sought in the Civil Action. In particular, the United States' interests include the need to prevent premature exposure of sensitive investigative information through the civil discovery process – an interest that the United States is uniquely positioned to protect. Moreover, discovery in the Criminal Case will involve information about current and former patients at SDCPMC and PSI; among other things, that and other discovery will be produced only subject to a criminal-case protective order. The United States is best positioned to protect this information, which may not be subject to the same protections in the Civil Case.

On substantially the same bases, disposition of the Civil Case without a stay will, "as a practical matter," impair the United States' ability to protect its interests, in particular the interests concerning the discovery. AUSAs from the Civil Division of the U.S. Attorney's Office, who are counsel for the defendants, cannot adequately represent this interest. As this Court knows well, Civil Division AUSAs are obliged to comport with the Federal Rules of Civil Procedure and civil actions generally, and are subject to important limitations on their ability to coordinate with Criminal Division AUSAs (who are

representing a different client). Counsel for defendants in the Civil Case cannot, as a practical matter, vindicate the interests at stake in the Criminal Case.

### 3. Permissive Intervention Is Proper Under Rule 24(b)(1)(B)

Permissive intervention under Rule 24(b)(1)(B) also is appropriate under *Perry*.

No independent jurisdictional grounds are required because the United States is not seeking to litigate any claim in this case on the merits, but is seeking intervention for the limited purpose of moving for a stay pending resolution in the Criminal Case. *See Beckman Indus., Inc. v Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992); *Sripetch et al.*, 2021 WL 165012, at *3. For the reasons already noted, this motion is timely. And, the Civil Case and the Criminal Case involve common questions of law and fact: whether the Medicare reimbursement claims submitted on behalf of SDCPMC and PSI are the product of fraud.

Finally, intervention will not unduly delay or prejudice the adjudication of the plaintiffs' rights. *See* Fed. R. Civ. P. 24(b)(3). As to delay, the United States' interests in safeguarding Medicare funds and the discovery in the Criminal Case, and ensuring Smith and Oertle do not have to make difficult choices about their Fifth Amendment rights, outweigh any interest that the Civil Case plaintiffs can claim in being paid sooner than later (if at all). Moreover, the grand jury has found probable cause to believe the reimbursement claims are fraudulent, and delay of the Civil Case to adjudicate that issue – beyond a reasonable doubt – is warranted to prevent possible inappropriate payments. Nor will delay of the Civil Case unduly prejudice the plaintiffs – they will not lose their ability to take discovery or otherwise seek to advance their case. Finally, it bears noting, plaintiffs in the Civil Case have been aware of the criminal investigation for many months, and must have filed their motion aware of the possibility that the Criminal Case would be charged.

Accordingly, this Court should grant the United States' motion to intervene.

### B. This Court Should Stay the SEC Case in the Interests of Justice

#### 1. Legal Standard

This Court has the inherent power to stay any action when "the interests of justice seem to require such action." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th

Cir. 1995) (quoting *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970)); *see Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). The determination whether to stay a civil proceeding turns on context, and should be reached "in light of the particular circumstances and competing interests" implicated by a given case. *Keating*, 45 F.3d at 324 (quoting *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989)). The Court should consider the extent to which the defendant's Fifth Amendment rights are implicated, *id.*, and the following factors:

> (1)The interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons or entities not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Id.* at 325. These factors weigh strongly in favor of a stay.

### 2. The Parties' Interests Support a Stay of the Civil Case

First, civil discovery would burden the parties in the Civil Case. For example, the defendants' civil discovery demands would almost certainly force a dilemma: in the Civil Case, Smith and Oertle would almost certainly be deposed, in light of their depth of experience working at (and, in Smith's case, owning) SDCPMC and PSI. They would likely either have to implicate themselves in the Criminal Case with sworn testimony, or invoke their Fifth Amendment rights and potentially incur negative inferences and consequences for SDCPMC and PSI in the Civil Action. *See, e.g., SEC v. Colello*, 139 F.3d 674, 677–78 (9th Cir. 1998) (affirming summary judgment in civil case based largely on defendant's invocation of his Fifth Amendment rights, even when result "may seem harsh" (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)); *United States v. Solano–Godines*, 120 F.3d 957, 962 (9th Cir. 1997)); *SEC v. Premier Holding Corp.*, No. 21-55249, 2022 WL541194 (9th Cir. Feb. 23, 2022) (affirming preclusion order against defendant who invoked Fifth Amendment). Not staying the Civil Case could well create substantial prejudice to the defendants in the Criminal Case.

The United States would suffer significant prejudice too. This is because, as discussed, plaintiffs in the Civil Action could take advantage of the discovery tools available under the Federal Rules of Civil Procedure, including third-party subpoenas, documents requests, depositions (including expert depositions), and interrogatories. While the plaintiffs do not have themselves have Fifth Amendment rights (as entities), the United States cannot rule out the possibility that they would seek to resist discovery requests by the defendants on the grounds that they could implicate Smith and Oertle in the criminal case. Moreover, in taking advantage of the civil discovery process, the plaintiffs could undermine carefully crafted limitations on criminal discovery, and the imminent protective orders, in the Criminal Case.

The Government recognizes that the Criminal Case charges Smith and Oertle in their personal capacities, and that the plaintiffs in the Civil Case are the entities SDCPMC and PSI. This distinction is irrelevant here, in an analysis that the Court makes on a practical level. Defendants in the Civil Case can still seek to depose Smith and Oertle, given the depth of their connections to SDCPMC and PSI, and put them to their dilemma of answering or invoking. (So too, Rule 30(b)(6) depositions could lead to binding statements by the people put up for the depositions.) The practical concerns about subverting the criminal discovery process and resisting the civil defendants' discovery demands remain the same. The analysis here is unaffected by the particular parties to the two cases.

### 3. A Stay Promotes the Efficient Use of Judicial Resources

The Court's interest in efficient use of resources also counsels in favor of granting a stay. As a threshold matter, resolution of the Criminal Case could well have a direct impact on the possible outcome of the Civil Case. If the jury concludes that the reimbursement claims to Medicare were part of a scheme to defraud, it is difficult to see how plaintiffs in the Civil Case could then obtain a remedy compelling disbursement of Medicare funds.

The lack of a stay will also require the Court's attention to the two matters. In the Civil Case, the Court has already ordered deadlines for the parties to file motions to remand to Superior Court, and to dismiss. If neither motion succeeds, the Court will likely order,

among other things: (1) the submission of early neutral evaluation statements; (2) an early neutral evaluation conference; (3) a case management conference, if no resolution is reached; (4) the submission of a joint discovery plan; (5) the submission of proposed civil protective orders; and (6) the completion of fact and expert discovery. Presiding over these events would likely require substantial judicial resources, and disputes may well involve the Magistrate Judge and the District Court. In summary, "[c]ivil discovery will…require the devotion of substantial resources both by the parties, in reviewing documents, propounding and responding to discovery, and taking and defending depositions, and by the Court in resolving the myriad of disputes that are likely to arise." *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1069 (C.D. Cal. 2008). All the while, and despite such judicial efforts, the litigants will likely be waiting for the culmination of the criminal proceedings before they fully attend to the critical aspects of the Civil Case. Given that the Criminal Case is going forward, the most efficient choice for the Court is to let that case reach its conclusion and then assessing whether and how the Civil Case should proceed.

### 4. A Stay Will Prevent Unfair Prejudice to the Government

A stay of the civil proceedings is appropriate to prevent plaintiffs from taking unfair advantage of broad civil discovery rules in the Civil Case, and thereby avoid the restrictions that would otherwise pertain in the Criminal Case. The likelihood of Smith and Oertle invoking Fifth Amendment rights could well make civil discovery "largely one-sided" because the civil defendants "would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery . . . ." *Nicholas*, 569 F. Supp. 2d at 1070; *see also Campbell v. Eastland*, 307 F.2d 478, 488 (5th Cir. 1962) ("A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit.").

The Court of Appeals for the Second Circuit, informed by its long history of presiding over parallel civil (SEC) and criminal cases, has also recognized that the government has "a discernible interest in intervening in order to prevent discovery in [a]

civil case from being used to circumvent the more limited scope of discovery [available] in [a] criminal matter." *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988). The vastly different rules that apply to discovery in civil and criminal cases are important reasons for staying civil proceedings and discovery in cases where there are parallel criminal proceedings. *See, e.g., Bridgeport Harbour Place I, LLC v. Ganim*, 269 F. Supp. 2d 6, 10 (D. Conn. 2002) ("Courts are very concerned about the differences in discovery afforded to parties in a civil case and those of a defendant in a criminal case."); *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1010 (E.D.N.Y. 1992) (granting stay, in part, because "[a]llowing civil discovery to proceed…may afford defendants an opportunity to gain evidence to which they are not entitled under the governing criminal discovery rules"); *SEC v. Beacon Hill Asset Management LLC*, No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (in granting request for civil stay of discovery due to pending criminal investigation, "the principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases."); *Philip Morris Inc. v. Heinrich*, No. 95 Civ. 0328 (LMM), 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (without stay, defendants "may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules").

Unlike in a civil case, criminal defendants ordinarily are not entitled to depose prosecution witnesses, much less engage in the type of far-ranging inquiry permitted by the civil rules. *See, e.g.*, Fed. R. Crim. P. 15(a). Nor are they able to obtain documents reflecting prior statements of witnesses before trial. *See* 18 U.S.C. § 3500; Fed. R. Crim. Proc. 16(a). Discovery in criminal cases is narrowly circumscribed for important reasons entirely independent of any generalized policy of restricting the flow of information to defendants. The criminal discovery rules "are purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witness from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment." *Nicholas*, 569 F. Supp. 2d at

1071–72 (citing *Campbell*, 307 F.2d at 487 n.12); *see also Founding Church of Scientology v. Kelley*, 77 F.R.D. 378, 381 (D.D.C. 1977). These concerns apply here. Defendants' ability to take depositions, serve interrogatories, and issue third party subpoenas, for example, would undoubtedly lead to discovery of information not discoverable in the Criminal Case, thus enhancing Smith's and Oertle's ability to manufacture evidence or tailor testimony—and otherwise seriously hamper the United States' ability to conduct an orderly investigation and prosecution.

Because the United States will suffer irreparable prejudice if defendants are permitted to obtain broad civil discovery prior to the conclusion of the criminal proceeding, the requested stay should be granted.

### 5. The Interests of the Public Support a Stay

Advancing the Criminal Case should take precedence over the Civil Case primarily because the Criminal Case implicates Smith's and Oertle's liberty interests, and the interests they and the public have in a resolution of the charges. *Nicholas*, 569 F. Supp. 2d at 1073; *see Kordel*, 397 U.S. at 12 n.27 ("Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action, sometimes at the request of the prosecution"); *Ashworth v. Albers Med., Inc.*, 229 F.R.D. 527, 532 (S.D. W. Va. 2005); (interest in litigating civil case "pales in comparison to the public interest as a whole in unraveling the criminal…scheme and punishing those responsible for that scheme."); *Bureerong*, 167 F.R.D. at 87 ("the interests of the Government in protecting its criminal investigation are clearly the paramount concern here"); *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. 2003) (stating that the "public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant"); *Giguiere*, 2018 WL 9516048, at *3 ("The public interest in protecting the integrity of the criminal actions and advancing the speedy resolution of the criminal actions weighs in favor of staying this civil action.").

A stay is especially appropriate here because, as set forth above, there is an indictment filed against Smith and Oertle for engaging fraudulent conduct that lays at the

heart of the Civil Case. Resolution of the Criminal Case therefore has the potential to provide an obvious resolution for the Civil Case. Moreover, assuming defendants in the Civil Action assert that the reimbursement claims are fraudulent, the Criminal Case will vindicate that argument, and the public's interest in ensuring that Medicare dollars are not obtained via fraud.

## IV.   CONCLUSION

For the foregoing reasons, the United States requests that this Court grants its motions to intervene in and to stay the above-captioned Civil Case pending resolution in the pending Criminal Case, *United States v. David James Smith et al.*, No. 22-CR-2842 CAB.

DATED: December 21, 2022

Respectfully Submitted,

RANDY S. GROSSMAN
United States Attorney

*/s/ Owen Roth*
OWEN ROTH
Assistant United States Attorney