1

2

3

4

5

6

7

8

9

10

11

12

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

PEOPLE OF THE STATE OF
CALIFORNIA *ex rel.* SAN DIEGO
COMPREHENSIVE PAIN
MANAGEMENT CENTER, INC.;
PACIFIC SURGICAL INSTITUTE OF
PAIN MANAGEMENT,

                                    Plaintiffs,

        v.

JAYSEN EISENGREIN; SANDRA
LOVE,

                                    Defendants.

Case No. 22-cv-1648-BAS (WVG)

**ORDER:**

**(1) DENYING PLAINTIFFS'
    MOTION TO REMAND
    (ECF No. 7);**

**(2) GRANTING DEFENDANTS'
    MOTION TO DISMISS
    (ECF No. 8);**

**(3) TERMINATING AS MOOT
    THE GOVERNMENT'S
    MOTION TO INTERVENE
    AND STAY (ECF No. 9); AND**

**(4) TERMINATING AS MOOT
    MOTION TO WITHDRAW AS
    COUNSEL (ECF No. 19)**

        Plaintiffs San Diego Comprehensive Pain Management Center, Inc. and Pacific
Surgical Institute of Pain Management, Inc. are a medical practice and surgery center that

treat patients with chronic pain.  This case is the second action involving a suspension of their Medicare payments.  Previously, Plaintiffs sued the Secretary of the Department of Health and Human Services and a Medicare contractor—Qlarant Integrity Solutions, LLC—to challenge the suspension.  This Court dismissed Plaintiffs' action for lack of subject matter jurisdiction, reasoning Plaintiffs failed to exhaust their administrative remedies under the Medicare Act.

Several months later, Plaintiffs filed this state court action against two employees of the Medicare contractor—Defendants Sandra Love and Jaysen Eisengrein.  Plaintiffs assert state law claims arising from Defendants' alleged role in suspending the Medicare payments.  Defendant Love removed the case under the federal officer removal statute.  Love alleges she can invoke federal officer removal because she is being sued for exercising her Medicare administration duties.

Now before the Court are two competing motions.  First, Plaintiffs move to remand, arguing removal was improper.  Second, Defendants move to dismiss on several grounds, including lack of subject matter jurisdiction.  For the following reasons, the Court denies Plaintiffs' Motion to Remand, grants Defendants' Motion to Dismiss, and terminates as moot the other pending motions.

## BACKGROUND

### I.    The Medicare Act

Title XVIII of the Social Security Act, commonly known as the Medicare Act, establishes a federally subsidized health insurance program covering the elderly and disabled.  42 U.S.C. §§ 1395–1395*lll*.  The Department of Health and Human Services ("HHS") administers Medicare.  *E.g.*, *Aylward v. SelectHealth, Inc.*, 35 F.4th 673, 675 (9th Cir. 2022).  The Secretary of HHS delegates this responsibility to the Centers for Medicare and Medicaid Services ("CMS")—an agency within HHS.  *Id.*

Under Parts A and B of Medicare, the Government "pays health care providers on a fee-for-service basis at rates approved by" CMS.  *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 909 (9th Cir. 2022).  Medicare, however, "pays

22cv1648

only for services that are 'reasonable and necessary.'"  *Odell v. U.S. Dep't of Health & Hum. Servs.*, 995 F.3d 718, 720 (9th Cir. 2021) (quoting 42 U.S.C. § 1395y(a)(1)(A)). Therefore, providers first submit claims for reimbursement for services, the Government reviews those claims, and then the Government makes appropriate payments to the providers.  42 C.F.R. § 405.920.

### A.    Administrative Contractors

From its inception, Medicare has relied on administrative contractors.  *Nat'l Gov't Servs., Inc. v. United States*, 923 F.3d 977, 979 (Fed. Cir. 2019).  CMS is authorized "to facilitate the evaluation and reimbursement of claims for covered medical treatment" by contracting with private entities, which then review and "process those claims on the Government's behalf."  *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 44 F.4th 838, 840 (9th Cir. 2022).   This type of contractor is known as a Medicare Administrative Contractor.   42 U.S.C. § 1395kk-1(a)(1).   Disputes arising under the Medicare Act often start with a contractor's decision to deny or pay a lower reimbursement amount for a provider's claim.  *E.g.*, *Odell*, 995 F.3d at 720; *Silverado Hospice, Inc. v. Becerra*, 42 F.4th 1112, 1117 (9th Cir. 2022).

Beyond enlisting contractors for claims processing, CMS uses outside entities for the congressionally mandated "Medicare Integrity Program."  42 U.S.C. § 1395ddd.  One of these entities is labeled a Unified Program Integrity Contractor ("UPIC").  *Angel's Touch Inc. v. Becerra*, No. CV-21-08026-PCT-MTL, 2021 WL 2138766, at *1 (D. Ariz. May 26, 2021); *Hollywood Home Health Servs., Inc. v. Qlarant Quality Sols., Inc.*, No. CV 19-6817-DMG (ASX), 2020 WL 3964792, at *1 (C.D. Cal. Feb. 27, 2020).  A UPIC performs activities that "promote the integrity of" Medicare, including auditing cost reports, reviewing service providers for fraud, and recovering "payments that should not have been made." 42 U.S.C. § 1395ddd(a), (b).

### B.    Suspension of Medicare Payments

Medicare contractors also assist CMS when it suspends a healthcare provider's Medicare payments.  42 C.F.R. § 405.372.  CMS can suspend payments "in whole or in

part" when CMS determines that "a credible allegation of fraud exists against a provider or supplier." *Id.* § 405.371(a)(2). Moreover, CMS may suspend payments without notice where there is a "belief that giving prior notice would hinder the possibility of recovering" Medicare funds. *Id.* § 405.372(a)(3). In enacting a suspension, CMS:

> (i)   In consultation with [the HHS Office of Inspector General] and, as appropriate, the Department of Justice, determines whether to impose the suspension and if prior notice is appropriate;
>
> (ii)  Directs the Medicare contractor as to the timing and content of the notification to the provider or supplier; and
>
> (iii) Is the real party in interest and is responsible for the decision.

*Id.* § 405.372.

With the Medicare contractor's help, CMS must give the provider an opportunity to submit a rebuttal statement in writing as to why the suspension should be removed. 42 C.F.R. § 405.372(a)(3), (b)(2). Within fifteen days of receiving a rebuttal, CMS determines whether the suspension should stay in effect. *Id.* § 405.375(a). That conclusion is not "an initial determination and is not appealable" within the Medicare Act's administrative process. *Id.* § 405.375(c); *see also Maka Hospice v. Azar*, No. CV 19-7065 DDP, 2020 WL 4284972, at *2 (C.D. Cal. July 24, 2020) ("The [suspension of Medicare payments] is nothing more than a temporary measure necessary to maintain the status quo while the necessary facts are gathered and evaluated." (quoting *Clarinda Home Health v. Shalala*, 100 F.3d 526, 530 (8th Cir. 1996))). Instead, after suspending payments, CMS must reevaluate in 180 days whether good cause exists to continue the suspension. 42 C.F.R § 405.371(b). A fraud-based suspension may be further continued if the Department of Justice is pursuing a civil or criminal action. *Id.* § 405.371(b).

## C.   Administrative Remedies

Although providers cannot appeal a temporary payment suspension, a suspension "may culminate in an appealable determination . . . if [reimbursement] claims are subsequently denied." 61 Fed. Reg. 63740, 63743 (Dec. 2, 1996). Further, CMS may

issue an overpayment demand if the agency concludes there was fraud.   42 C.F.R.
§ 405.372(c).   An overpayment demand is a decision that trigger's the Medicare Act's
administrative appeals process.   *See id.* §§ 405.904(a)(2), 405.375(c).   Under this process:

> Before filing suit in court, a Medicare beneficiary must proceed through five
> levels of administrative review, described in regulations issued by CMS as
> follows: (1) an initial determination by the Medicare administrative
> contractor; (2) a redetermination by the Medicare administrative contractor;
> (3) reconsideration by a qualified independent contractor; (4) a hearing
> before an administrative law judge . . . ; and (5) review by the Medicare
> Appeals Council.   If the beneficiary is dissatisfied with the Appeals
> Council's decision, he or she may then seek judicial review.

*Glob. Rescue Jets*, 30 F.4th at 911 (citations omitted) (citing 42 C.F.R. §§ 405.920,
405.940, 405.960, 405.1000, 405.1136).

## II.   Prior Action

As mentioned, Plaintiffs treat patients with chronic pain.   (Compl. ¶ 7.)   A
"plurality of the patients in Plaintiffs' medical practice and surgery center are Medicare
beneficiaries."   (*Id.* ¶ 10.)   In September 2021, Plaintiffs stopped receiving payments
from Medicare "without notice or explanation."   (*Id.* ¶ 11.)

In late 2021, Plaintiffs sued HHS and Qlarant Integrity Solutions, LLC to remove
the suspension and receive payments for their outstanding claims.   *San Diego
Comprehensive Pain Mgmt. Ctr., Inc. v. Becerra*, No. 21-CV-01739-BAS-WVG, 2021
WL 5741465 (S.D. Cal. Dec. 2, 2021) ("*SDCPMC I*").   Qlarant "is the UPIC for
Medicare and Medicaid Program Integrity in the Western jurisdiction, which includes
California." (Love Decl. ¶ 7, ECF No. 8-2.)   The first Defendant in the present case—
Sandra Love—is the President of Qlarant.   (*Id.* ¶ 1.)   In addition, during the period
relevant here, Defendant Jaysen Eisengrein served as Qlarant's Program Director for its
UPIC role.   (Eisengrein Decl. ¶ 4, ECF No. 8-1.)

In the prior case, Plaintiffs demanded that their suspension be immediately
terminated and moved for a temporary restraining order.   After a hearing, the Court
denied Plaintiffs' request for preliminary relief.

Soon after, the Court issued an order addressing exhaustion of administrative remedies under the Medicare Act. *SDCPMC I*, 2021 WL 5741465. Plaintiffs conceded "that they ha[d] not exhausted the administrative remedies available to them." *Id.* at *3. Hence, the Court analyzed whether waiving the exhaustion requirement was appropriate. *Id.* The Court found waiver was not warranted. *Id.* at *4–6. The Court consequently dismissed Plaintiffs' action for lack of subject matter jurisdiction. *Id.* at *6.

## III. This Action

### A. Suspension Correspondence

While Plaintiffs litigated the prior case, the administrative process for their suspension continued in the background. Plaintiffs had received a Notice of Suspension from Qlarant on behalf of CMS in October 2021. (*See* Compl. Ex. A.) After a rebuttal from Plaintiffs, Qlarant sent two letters that Plaintiffs allege are the basis of this action. (*Id.* ¶ 12.) In the first letter, Qlarant cites Medicare regulations and informs Plaintiffs:

> Prior notice of the suspension was not provided because giving prior notice would place additional Medicare funds at risk and hinder the ability of [CMS] to recover any determined overpayment.
>
> . . . .
>
> As stated in Qlarant's response dated November 16, 2021, . . . CMS is responsible for determining if a suspension of Medicare payments is warranted under applicable federal regulations and, as appropriate, whether and when a suspension may be terminated.
>
> . . . .
>
> As stated in the Notice of Suspension ("Notice"), dated October 22, 2022, the suspension of Medicare payments to SDCPMC is based on credible allegations of fraud. Specifically, the suspension of SDCPMC's Medicare payments is based on, but not limited to, information that SDCPMC misrepresented services billed to the Medicare program. More particularly, CMS has credible allegations that SDCPMC submitted claims to Medicare for services that were medically unnecessary.

(Compl. Ex. A (citations omitted).)

Plaintiffs again responded to challenge their suspension. (Compl. Ex. B.) This response prompted another letter from Qlarant dated February 25, 2022. (*Id.* Ex. C.)

- 6 -

22cv1648

Qlarant's second letter addressed Plaintiffs' follow-up correspondence on behalf of CMS and reaffirmed it was not appropriate to end the suspension. (*Id.*)

### B.   Plaintiffs' Claims

Plaintiffs later filed this action against two of Qlarant's employees—Eisengrein and Love—in state court. Plaintiffs allege Defendants fraudulently schemed to deny them Medicare payments. (Compl. ¶¶ 1–14.) Pointing to the correspondence concerning their suspension, Plaintiffs allege Defendants conspired to make false or fraudulent statements "for the purpose of denying compensation." (*Id.* ¶ 3.) Plaintiffs further claim those false statements are "fraudulent denials of valid claims in violation of California law." (*Id.* ¶ 12.) Consequently, Plaintiffs bring claims against Defendants under California's Insurance Fraud Prevention Act[1] and Unfair Competition Law. (*Id.* ¶¶ 33–42.)

### C.   Removal

Love, represented by the United States Attorney, removed this action. (Notice of Removal ¶¶ 13–25.) Plaintiffs move to remand. (Mot. to Remand, ECF No. 7.) Although Eisengrein had not yet been served when Love removed the case, he is similarly situated, so he joins Love in opposing remand. (Remand Opp'n, ECF No. 12.) Further, on the same day Plaintiffs filed their Motion to Remand, Defendants moved to dismiss the case for lack of subject matter jurisdiction and on other grounds. (Mot. to Dismiss, ECF No. 8.) Plaintiffs oppose dismissal. (Opp'n, ECF No. 11.)

More recently, the United States moved to intervene in and to stay these proceedings. (ECF No. 9.) The Government makes this request in light of a pending indictment that alleges Plaintiffs' principal and a long-time employee engaged in a scheme to defraud Medicare by submitting false and fraudulent reimbursement claims.

---

[1] This statute contains a qui tam provision, which states that "[a]ny interested persons, including an insurer, may bring a civil action for a violation of this section for the person and for the State of California. The action shall be brought in the name of the state." Cal. Ins. Code § 1871.7(e)(1). For simplicity, the Court refers to the relator medical practice and surgery center as the "Plaintiffs" throughout this order.

*United States v. Smith et al.*, 22-cr-2842-CAB (S.D. Cal. filed Dec. 13, 2022).  The Court turns to the jurisdictional motions.[2]

## MOTION TO REMAND

The Notice of Removal invokes two grounds: federal officer removal under 28 U.S.C. § 1442(a)(1) and federal question jurisdiction under 28 U.S.C. § 1331.  Because the first ground is dispositive, the Court limits its discussion to federal officer removal.

## I.   Federal Officer Removal

The federal officer removal statute allows for the removal of "[a] civil action or criminal prosecution" against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof." 28 U.S.C. § 1442(a)(1).  This provision "should be 'liberally construed' to fulfill its purpose of allowing federal officials and agents who are being prosecuted in state court for acts taken in their federal authority to remove the case to federal court." *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 756 (9th Cir. 2022) (quoting *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007)).

Defendant Love is not an officer of the United States; she is the president of a private entity contracting with the Government.  So, the question is whether she can remove this case as a "person acting under" such an officer.  *See* 28 U.S.C. § 1442(a)(1).  Love can do so by establishing (1) she "is a person within the meaning of the statute," (2) there is a "causal nexus" between her actions—taken under a federal officer's directions—and Plaintiffs' claims; and (3) she "can assert a colorable federal defense."

---

[2]  Although the Court has the inherent power to stay proceedings, it must balance that discretion against its obligation to ensure jurisdiction is proper.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Ex parte McCardle*, 74 U.S. 506, 514 (1868).  In some contexts, it may be appropriate to resolve a motion to stay before a motion to remand.  *See, e.g., Zhang v. Ancestry.com Operations Inc.*, No. 21-CV-07652-LB, 2022 WL 718486, at *2 (N.D. Cal. Mar. 10, 2022); *McCrerey v. Merck & Co.*, No. CIV. 04-2576-WQH-WMC, 2005 WL 6124182, at *3 (S.D. Cal. Mar. 3, 2005).  Here, the Government's stay motion is principally based on concerns that could arise if this case proceeds to discovery or trial while the criminal matter is pending.  Therefore, the Court resolves the parties' remand and dismissal motions despite the Government's request to stay.

*Cnty. of San Mateo*, 32 F.4th at 755 (citing *Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981, 986–87 (9th Cir. 2019)).

Love indisputably meets the first requirement for removal—she is a "person" within the meaning of § 1442(a)(1). (Mot. to Remand 8:14–15.)   *See Stirling v. Minasian*, 955 F.3d 795, 800 (9th Cir. 2020).   As to the remaining requirements, Love alleges "her actions were taken as an employee of Qlarant, a UPIC contractor, while exercising her duties related to the administration of the Medicare program." (Notice of Removal ¶ 16.)   And she seeks to raise federal defenses concerning whether Plaintiffs must first exhaust their administrative remedies under the Medicare Act and instead sue the Secretary of HHS for relief.   (*Id.* ¶ 18.)

## II.   Challenge to Removal Allegations

Plaintiffs contest whether the second and third requirements for federal officer removal are met.   (Mot. to Remand 8:13–11:23.)   Because Plaintiffs challenge the existence of removal jurisdiction, their motion is "the functional equivalent of a defendant's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)."   *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014).   And the court's analysis starts with the jurisdictional allegations.   *Id.*   at 1121.

To remove a case, the defendant must provide "a short and plain statement of the grounds for removal."   28 U.S.C. § 1446(a).   This language tracks the requirements for pleading jurisdiction under Federal Rule of Civil Procedure 8(a).   *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014); *Leite*, 749 F.3d at 1121.   Hence, a defendant must plead factual allegations that plausibly show the requirements for federal officer removal are met.   *See Leite*, 749 F.3d at 1121.   When that pleading requirement is satisfied, the defendant's "allegations will ordinarily be accepted as true unless challenged by the [plaintiff]," *see id.* at 1121, or "questioned by the court," *cf. Dart Cherokee*, 574 U.S. at 87.

In moving to remand, a plaintiff "may raise either a facial attack or a factual attack on the [defendant's] jurisdictional allegations."   *Leite*, 749 F.3d at 1122; *see also, e.g.*,

*White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  In a facial attack, the plaintiff asserts that the jurisdictional allegations, even if true, "are insufficient on their face to invoke federal jurisdiction."  *Leite*, 749 F.3d at 1121 (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).

By contrast, in a factual attack, the plaintiff disputes the truth of the defendant's factual allegations, "usually by introducing evidence outside the pleadings."  *Leite*, 749 F.3d at 1121; *see also Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  Once the plaintiff has converted the motion into a factual attack by presenting "competent proof," the defendant must also present "competent proof" to satisfy the burden of establishing that removal is proper by a preponderance of the evidence.  *Leite*, 749 F.3d at 1124; *see also Savage*, 343 F.3d at 1039 n.2; *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

## III.  Categorizing Plaintiffs' Challenge

The Court initially considers whether Plaintiffs raise a facial or factual challenge to Love's jurisdictional allegations.  It is a mixed bag.  On the one hand, Plaintiffs argue the question "is whether the Complaint alleges that the conduct of the Defendants was within the performance of their federal duties or was ultra vires."  (Mot. to Remand 8:21–22.)  Plaintiffs then cite their Complaint to argue Love's removal allegations are "contradicted," and therefore, federal officer removal is improper.  (*Id.* 9:2–3.)

There are two obstacles to this line of attack.  First, the well-pleaded complaint rule is inapplicable to federal officer removal.  *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006).  "Suits against federal officers are exceptional in this regard.  Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint."  *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999).  Meaning, Plaintiffs' Complaint does not control whether this case is removable under § 1442(a)(1).

In the same vein, the allegations in Plaintiffs' Complaint are insufficient to raise a factual challenge to jurisdiction.  "A factual challenge 'rel[ies] on affidavits or any other

evidence properly before the court' to contest the truth of the [challenged] allegations." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 (9th Cir. 2014) (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).   Plaintiffs' unverified allegations are not "evidence."   *See id.*; *see also, e.g.*, *Moran v. Selig*, 447 F.3d 748, 759 (9th Cir. 2006); *Flaherty v. Warehousemen, Garage & Service Station Employees' Local Union No. 334*, 574 F.2d 484, 486 n.2 (9th Cir. 1978).   Hence, Plaintiffs' allegations cannot be used to contest Love's jurisdictional allegations in the Notice of Removal.

On the other hand, Plaintiffs reference several documents outside the pleadings in their Motion to Remand.   These items are: (A) the draft Umbrella Statement of Work for UPIC contractors, (B) an HHS report on UPICs, and (C) a CMS contract list showing the agency awarded Qlarant the UPIC contract.   (Rifat Decl. Exs. A–C, ECF No. 7-2.)   These documents, however, do not "contest the truth of" Love's jurisdictional allegations.   *See Courthouse News Serv.*, 750 F.3d at 780.   The exhibits instead are used to support Plaintiffs' argument that their Complaint shows Love acted outside the scope of her federal duties.   (Mot. to Remand 9:6–10:10.)   Yet because the Court is not bound by Plaintiffs' allegations, these items alone do not convert their motion into a factual challenge.

Overall, the Court finds Plaintiffs raise only a facial challenge to Love's removal allegations.   The Court will address Plaintiffs' legal arguments below, but it finds Plaintiffs did not trigger Love's obligation to support "her jurisdictional allegations with 'competent proof' under the same evidentiary standard that governs in the summary judgment context."[3]   *See Leite*, 749 F.3d at 1121 (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010)).

---

[3] Even if the Court concluded Plaintiffs raise a factual challenge, the end result would not differ. The Court has wide latitude to consider the "entire record" when assessing a factual challenge to subject matter jurisdiction.   *See CapitalKeys, LLC v. Democratic Rep. of Congo*, No. 15-cv-2079 (KBJ), 2021 WL 2255362, at *19 (D.D.C. June 3, 2021) (Jackson, J.); *see also CSR Ltd. v. CIGNA Corp.*, 405 F. Supp. 2d 526, 533 n.3 (D.N.J. 2005) (noting district court has "authority . . . to consider the entire record" under Rule 12(b)(1)).   Here, Defendants submitted declarations with their Motion to Dismiss

**IV.   Causal Nexus**

Returning to the challenged federal officer removal requirements, Love must establish there is a "causal nexus" between her actions—taken under a federal officer's directions—and Plaintiffs' claims. *Cnty. of San Mateo*, 32 F.4th at 755. "To demonstrate a causal nexus, the private person must show: (1) that the person was 'acting under' a federal officer in performing some 'act under color of federal office,' and (2) that such action is causally connected with the plaintiff's claims against it." *Id.* (citing *Goncalves ex rel. Goncalves v. Rady Child.'s Hosp. San Diego*, 865 F.3d 1237, 1244–50 (9th Cir. 2017)).

**A.   Acting Under a Federal Officer**

"The words 'acting under are broad, and . . . the statute must be 'liberally construed.'" *Watson*, 551 U.S. at 147 (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)). To determine whether a person was "acting under" a federal officer, the Ninth Circuit examines if the defendant was:

(1)   working under an officer "in a manner akin to an agency relationship";

(2)   being "subject to the officer's close direction, such as acting under the . . . 'guidance, or control' of the officer" or having an "unusually close" relationship "involving detailed regulation, monitoring, or supervision";

(3)   helping fulfill "basic governmental tasks"; and

(4)   conducting activities "so closely related to the government's implementation of its federal duties that the . . . person faces 'a significant risk of state-court prejudice.'"

*City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1107 (9th Cir. 2022) (alterations in original) (quoting *San Mateo*, 32 F.4th at 756–57).

---

that would rebut a factual challenge and lead the Court to reach the same conclusion on removal jurisdiction.

Beyond these factors, the Ninth Circuit has guided that "neither 'an arm's-length business arrangement with the federal government' nor 'suppl[ying] it with widely available commercial products or services'" is sufficient "to show 'acting under' a federal officer." *Honolulu*, 39 F.4th at 1107 (quoting *San Mateo*, 32 F.4th at 757); *see also Lake v. Ohana Mil. Cmtys., LLC*, 14 F.4th 993, 999, 1004–05 (9th Cir. 2021) (reasoning housing defendants did not act under a federal officer where the Navy formed a Private-Public Venture to build housing on a military base because the venture's operating agreement gave "sole and exclusive management and control" to the private partner); *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 727–30 (9th Cir. 2015) (holding that where contractor defendant's plan to destroy seized fireworks went awry, defendant was not acting under a federal officer because the Government did not dictate or control the contractor's plan for destroying the fireworks).

Moreover, complying "with the law and obeying federal orders are also not enough, 'even if the regulation is highly detailed and . . . the private firm's activities are highly supervised and monitored.'" *Honolulu*, 39 F.4th at 1107 (quoting *San Mateo*, 32 F.4th at 757). Although the federal officer removal statute should be broadly construed, courts may not interpret it "so as to 'expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries.'" *Id.* (quoting *San Mateo*, 32 F.4th at 757); *see also Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 684–86 (9th Cir. 2022) (explaining that nursing home defendants were not acting under a federal officer where they were subject to various regulations and recommendations concerning the COVID-19 pandemic); *Riggs*, 939 F.3d at 984–90 (determining helicopter manufacturer did not act under the FAA because prescriptive rules allowing private parties to certify aircraft fall "within the 'simple compliance with the law' circumstance").

On the other hand, in *Goncalves*, the Office of Personnel Management ("OPM") contracted with the defendants to administer a health insurance plan for federal employees under the Federal Employee Health Benefit Act ("FEHBA"). 865 F.3d at

1242.  The Ninth Circuit found the private defendants acted under a federal officer when they placed a subrogation lien on settlement proceeds.  *Id.* at 1244.  The Ninth Circuit reasoned the FEHBA allowed OPM to contract with private carriers for employees' health insurance and gave the agency broad authority over the program.  *Id.* at 1246.  And under this scheme, "[a] carrier is not acting as an insurer so much as it is acting as a claims processor, serving as the government's agent while the government takes the place of the typical health insurer in hedging bets."  *Id.*  Further, while pursuing subrogation claims on the OPM's behalf, the defendants "go well 'beyond simple compliance with the law and help[ ] officers fulfill other basic governmental tasks.'"  *Id.* at 1247 (alteration in original) (quoting *Watson*, 551 U.S. at 153).  Finally, to buttress its conclusion, the Ninth Circuit noted "a number of federal courts have determined that Medicare Part B carriers contracting with [HHS] 'act under' a federal officer."  *Id.* at 1249 n.2.

For similar reasons, the Court finds the "acting under" requirement is met here.  The Court described the scheme for Medicare contractors above, including UPICs.  Like the FEHBA examined in *Goncalves*, the Medicare Act empowers HHS to contract with private parties to effectuate the subsidized health insurance program.  The Medicare Act specifically requires HHS to create a "Medicare Integrity Program" using contractors, which is how Love's employer, Qlarant, entered the picture as a UPIC.  *See* 42 U.S.C. § 1395ddd.  Moreover, like the OPM asking administrators to purse subrogation claims, CMS tasked Qlarant with conveying Medicare payment suspension determinations and receiving rebuttal statements from providers.  *See* 42 C.F.R. § 405.372 (providing CMS "[d]irects the Medicare contractor as to the timing and content of the notification to the provider or supplier" and requires "the Medicare contractor" to "give the provider or supplier an opportunity to submit a rebuttal statement").  Absent Qlarant and its employees' support, the Government would have to perform these "basic governmental tasks."  *See Honolulu*, 39 F.4th at 1107.  Overall, Qlarant's role in the Medicare Integrity Program goes well beyond simply complying with the law or operating in a highly regulated industry.  *See San Mateo*, 32 F.4th at 757.

Hence, the Court finds Love was "acting under" a federal officer—CMS and the Secretary of HHS—to satisfy the first prong of the causal nexus inquiry under § 1442(a)(1).  *See San Mateo*, 32 F.4th at 755.

### B.    Connection to Plaintiffs' Claims

The second prong of the causal nexus inquiry requires Love to show her acts under a federal officer are "causally connected with" Plaintiffs' claims against her.  *See San Mateo*, 32 F.4th at 755.  "[T]he 'hurdle erected by [the causal-connection] requirement is quite low.'"  *Goncalves*, 865 F.3d at 1244 (quoting *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008)); *see also Maryland v. Soper*, 270 U.S. 9, 33 (1926) (explaining the removed action need not target "the very acts" done under federal authority—it is sufficient that the defendant's acts or presence in the performance of official duties "constitute the basis, though mistaken or false, of the state" action).   Removing defendants thus "need show only that the challenged acts 'occurred *because of* what they were asked to do by the Government.'"  *Goncalves*, 865 F.3d at 1245 (quoting *Isaacson*, 517 F.3d at 137).

Returning to the example used above, in *Goncalves*, OPM asked the private defendants to make reasonable efforts to pursue subrogation claims as part of their administration of a government health plan.  865 F.3d at 1245.  The removed action arose from the defendants' subrogation efforts—their decision to place a lien on medical negligence settlement proceeds—so the causal connection requirement was easily met.  *Id.*; *see also Stirling*, 955 F.3d at 801 (reasoning prong was met where case presented a challenge to actions defendant attorney performed "pursuant to federal regulation").

Love satisfies the low hurdle for this second prong of the causal nexus inquiry.  The acts Plaintiffs challenge arise out of the suspension of their Medicare benefits.  And Love alleges those acts "were taken as an employee of Qlarant, a UPIC contractor, while exercising her duties related to the administration of the Medicare program."  (Notice of Removal ¶ 16.)  Hence, Love demonstrates the challenged actions occurred because of what she was asked to do by a federal agency—CMS.  *See Goncalves*, 865 F.3d at 1245;

*see also Gordy v. CareMore Health Plan*, No. SACV 19-00048JVS(JDEx), 2019 WL 1237421, at *4 (C.D. Cal. Mar. 18, 2019) (reasoning Medicare contractor defendant "need only show that the challenged acts 'occurred because of what [it] was asked to do by [CMS]'" (alterations in original)).

Plaintiffs' core counterargument is unpersuasive. They argue Love is not being sued for her actions performed on behalf of the Government because she allegedly engaged "in overt fraud." (Mot. to Remand 8:21–24.) However, as mentioned, the Court is not bound by the framing of the Complaint. *See Jefferson Cnty*, 527 U.S. at 431–32 (crediting the removing defendants' "theory of the case" for the "acting under" requirement of § 1442(a)(1)). Plaintiffs also fail to factually dispute Love's allegation that her actions were taken as part of her Medicare administration duties for CMS.

In short, both prongs of the second requirement for federal officer removal are met. Love acted under a federal officer when performing duties for a Medicare administrative contractor as part of a regulatory scheme that helps the Government fulfill basic tasks. And these actions are causally connected to Plaintiffs' claims arising out of their Medicare payment suspension.

## V.   Colorable Defense

The final stop in the removal analysis is that Love must show she "can assert a colorable federal defense." *San Mateo*, 32 F.4th at 755 (quoting *Riggs*, 939 F.3d at 987). A "colorable" defense, of course, need not be "in fact meritorious." *Stirling*, 955 F.3d at 801 (quoting *Leite*, 749 F.3d at 1124). As the Supreme Court put it, defendants invoking the federal officer removal statute "need not win" their case before they can have it removed. *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

Love identifies two related federal defenses in her Notice of Removal. First, citing the Court's opinion in the first action Plaintiffs brought against HHS, Love alleges Plaintiffs failed to exhaust their administrative remedies under the Medicare Act. (Notice of Removal ¶ 17.) Second, Love alleges she "has the defense that she is not the real party in interest to this case." (*Id.* ¶ 18.) Citing cases, Love claims "the Secretary, in his or her

official capacity as the Secretary of the HHS, is the proper governmental defendant in Medicare cases, not the contractors who administer Medicare." (*Id.*)

These defenses relate to the Medicare Act's "exhaustion requirement, 42 U.S.C. § 405(h)," which "makes judicial review under a related provision, 42 U.S.C. § 405(g), 'the sole avenue for judicial review' for claims 'arising under' the Medicare Act.'" *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1140 (9th Cir. 2010) (quoting *Heckler v. Ringer*, 466 U.S. 602, 614–15 (1984)). "[T]he exhaustion requirement of § 405(g) consists of a nonwaivable requirement that a 'claim for benefits shall have been presented to the Secretary,' and a waivable requirement that the administrative remedies prescribed by the Secretary be pursued fully by the claimant." *Heckler*, 466 U.S. at 617 (citations omitted) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976)).

In the prior case, which the Court dismissed on administrative exhaustion grounds, it was undisputed "that Plaintiffs' claims challenging the suspension of Medicare payments arise under the Medicare Act and federal jurisdiction must be based on 42 U.S.C. § 405(g)." *SDCPMC I*, 2021 WL 5741465, at *3. The wrinkle here is that Plaintiffs now bring state law claims against Love. Hence, to reach the same conclusion, the Court will need to find Plaintiffs' claims arise under the Medicare Act notwithstanding their state law framing. *See Do Sung Uhm*, 620 F.3d at 1141–48. "[E]ven a state law claim may 'arise under' the Medicare Act." *Id.* at 1142 (citing *Kaiser v. Blue Cross of California*, 347 F.3d 1107, 1113–15 (9th Cir. 2003)).

The circumstances show Love's defenses are colorable: after the Court dismissed Plaintiffs' claims involving the suspension of their Medicare payments against the Secretary of HHS and Qlarant, Plaintiffs brought state law claims involving their suspension of Medicare payments against employees of Qlarant. Why should the outcome be any different? The Court delves further into Love's defenses below to resolve the Motion to Dismiss. For purposes of removal, however, the Court has "little trouble concluding" Love's allegations involving the Medicare Act and the need to sue a

proper governmental defendant are "colorable federal defense[s]." *See Goncalves*, 865 F.3d at 1249.

\* \* \*

The Court finds Love properly invoked the federal officer removal statute, 28 U.S.C. § 1442(a)(1), to remove Plaintiffs' action against her.  Love is entitled to raise her defenses in a federal forum.  Consequently, the Court denies Plaintiffs' Motion to Remand.

## MOTION TO DISMISS

Having found removal was proper, the Court turns to Love and Eisengrein's Motion to Dismiss.  Defendants challenge Plaintiffs' claims under Rule 12(b)(1), (b)(2), and (b)(6).  The Court focuses its discussion on Rule 12(b)(1) because this ground is decisive.

## I.   Exhaustion Under the Medicare Act

Defendants contend this case is subject to dismissal on the same grounds as the prior lawsuit:  because Plaintiffs' claims arise under the Medicare Act, they cannot be pursued until Plaintiffs exhaust their administrative remedies.  (Mot. to Dismiss 10:17–13:27.)  Plaintiffs counter that the exhaustion requirement is inapplicable because this case "is entirely different" and raises "purely state law claim[s] against private individuals."  (Opp'n 5:8, 7:6–10:13.)

The Court provided an overview of Medicare's exhaustion requirement both in its prior order and while analyzing removal above.  "The upshot" is that "Section 405(g) provides 'the only avenue for judicial review' of a claim for benefits under the Medicare Act, and failure to exhaust one's administrative remedies deprives federal courts of subject matter jurisdiction over claims arising under the Act."  *Glob. Rescue Jets*, 30 F.4th at 913 (quoting *Heckler*, 466 U.S. at 617).

"Claims 'arise under' the Medicare Act in two circumstances:  '(1) where the "standing and the substantive basis for the presentation of the claims" is the Medicare Act; and (2) where the claims are "inextricably intertwined" with a claim for Medicare

benefits.'" *Glob. Rescue Jets*, 30 F.4th at 917 (quoting *Do Sung Uhm*, 620 F.3d at 1141). "One category of claims that [the Ninth Circuit] and other courts have found to 'arise under' the Act are those cases that are '[c]leverly concealed claims for benefits.'" *Do Sung Uhm*, 620 F.3d at 1141 (quoting *Kaiser*, 347 F.3d at 1112). To that end, "the type of remedy sought is not strongly probative of whether a claim" arises under the Medicare Act. *Kaiser*, 347 F.3d at 1112. Hence, "a suit seeking extra-Medicare monetary damages may also be a suit arising under Medicare." *Id.* And state common law and consumer protection claims cannot always escape the reach of the Medicare Act's exhaustion requirement. *See Glob. Rescue Jets*, 30 F.4th at 918–19; *Kaiser*, 347 F.3d at 1113–15.

## II. Plaintiffs' State Law Claims

To recap, Plaintiffs bring two state law claims against Defendants: violation of California's Insurance Fraud Prevention Act and Unfair Competition Law ("UCL"). (Compl. ¶¶ 33–42.) These claims are based on alleged misrepresentations Defendants made in correspondence concerning Plaintiffs' temporary suspension of Medicare payments, which Plaintiffs allege constitute "fraudulent denials of valid claims in violation of California law." (*Id.* ¶ 12.) Defendants argue this "Complaint is (at bottom) a thinly disguised renewed challenge to the temporary Medicare suspension that bars immediate payment of the Pain Management Centers' claims." (Mot. to Dismiss 11:21–24.) The Court agrees.

Although recast as state law claims against employees of Qlarant, Plaintiffs' claims are inextricably intertwined with those claims the Court found are subject to the Medicare Act's exhaustion requirement. The Complaint's allegations dispute the justification Qlarant—a Medicare UPIC—provided for suspending Plaintiffs' Medicare payments and refusing to terminate the suspension. To determine whether Plaintiffs' allegations are true, a factfinder would have to decide whether the suspension was either: (a) at the direction of CMS for legitimate reasons under 42 C.F.R. § 405.371(a)(2); or (b) because of Defendants' alleged scheme to "target innocent medical providers and contrive allegations of fraud that have no basis in fact," (*see* Compl. ¶ 3). *See also* 42 C.F.R. §

405.372 (providing CMS is the one who determines "whether to impose the suspension" and "[d]irects the Medicare contractor as to the timing and content of the notification to the provider").  As Defendants note, this inquiry would go "to the heart of whether the temporary payment suspension is valid—an issue under consideration in the unexhausted administrative proceedings." (Reply 3:21–23.)  And, of course, Plaintiffs' efforts to undo their temporary suspension are ultimately an attempt to recover the "well over $1 million" they are allegedly owed for services billed to Medicare.  (*See* Compl. ¶ 12.)

Given these circumstances, this case is similar to *Global Rescue Jets*, where the Ninth Circuit determined a California UCL claim fell under the Medicare Act because resolving the claim hinged on whether the defendant correctly interpreted its obligations under a Medicare Advantage plan.  *See* 30 F.4th at 917.  Conversely, this case presents different facts than the decision in *Do Sungh Uhm*, 620 F.3d at 1145.  There, the Ninth Circuit determined fraud and consumer protection claims did not arise under the Medicare Act.  *Id.*  Those state law claims, however, related to alleged misrepresentations the defendant made to induce the plaintiffs to enroll in a Medicare Part D plan.  *Id.*  By contrast, the alleged misrepresentations here occurred in correspondence Defendants' employer sent as part of the administrative process for suspending Plaintiffs' Medicare payments.  *See id.*; *see also Glob. Rescue Jets*, 30 F.4th at 919 (distinguishing the claims in *Do Sung Uhm* because those claims concerned "misrepresentations about coverage start dates or customer service").

In addition, the Court finds persuasive an analogous decision from the Seventh Circuit in *Bodimetric Health Services, Inc. v. Aetna Life & Casualty*, 903 F.2d 480 (7th Cir. 1990).  The Ninth Circuit relied upon *Bodimetric* in its *Kaiser* decision analyzing exhaustion under the Medicare Act.  *Kaiser*, 347 F.3d at 1114.  As the Ninth Circuit summarized:

> In *Bodimetric*, a home health agency ran into difficulties in its relationship with its Medicare fiscal intermediary, Aetna.  As a result of Aetna's refusal to pay certain claims, Bodimetric was forced to shut down.  Bodimetric in its lawsuit made numerous claims against Aetna, including fraud, fraudulent

- 20 -

concealment, breach of contractual relationship, tortious breach of implied covenant of good faith and fair dealing and intentional harm to property interest.  The Seventh Circuit concluded that "litigants who have been denied benefits" should not be allowed to obtain federal jurisdiction by "recharacterizing their claims under state and federal causes of action," and rejected Bodimetric's argument that its damages claims were not "inextricably intertwined."

*Kaiser*, 347 F.3d at 1114.

Like *Bodimetric*, Plaintiffs are suing part of the statutorily authorized Medicare system—employees of a UPIC—and claiming Defendants' conduct—suspending the Medicare payments—harmed Plaintiffs' business.  Defendants, however, submit uncontested evidence that their employer carried out that suspension at the direction of CMS.  (Love Decl. ¶ 14.)  As the temporary suspension regulation notes, CMS "[i]s the real party in interest and is responsible for the [suspension] decision."  *See* 42 C.F.R. § 405.372.  That means the Secretary of HHS—one of the parties Plaintiffs sued in their prior case—is the one responsible for the allegedly unlawful suspension or denial of claims.  *Cf. Bodimetric*, 903 F.2d at 487 ("If dissatisfied claimants could avoid the preclusive effect of section 405(h) by simply bringing suit against the fiscal intermediary instead of the Secretary, the Medicare Act's goals of efficiency and finality would be substantially undermined.").

Moreover, in "enacting the exclusive review provisions of the Medicare Act, Congress expressly limited the remedies that can be sought by dissatisfied claimants" from private parties that are carrying out integral functions of the Medicare system.  *See Bodimetric*, 903 F.3d at 490.  "While this may, in some cases, foreclose avenues of relief generally available to civil litigants, it is also the system Congress clearly intended to implement."  *Id.*; *see also Glob. Rescue Jets*, 30 F.4th at 915–17 (rejecting argument that Medicare Advantage Organization did not qualify "as an 'officer or employee' of the United States or the Secretary, as those terms are used in the third sentence of § 405(h)").  Consequently, the Court finds Plaintiffs cannot evade this Court's administrative

22cv1648

exhaustion ruling by bringing recharacterized state law claims against employees of a Medicare contractor.

Nor does the Court find waiving the exhaustion requirement is appropriate. The Court addressed the requirements for waiver in its prior dismissal order. *SDCPMC I*, at *4–6. Because Plaintiffs' state law claims are a disguised challenge to their Medicare payment suspension, the Court finds no reason to deviate from its prior reasoning. In particular, the collaterality requirement remains unsatisfied. Plaintiffs' state law claims are not collateral to their pursuit of suspended benefit payments because determining these claims would necessarily require the Court to "examine whether their suspension is without merit and in violation of the relevant statute and regulations." *See id.* at *4.

In short, the Court finds Plaintiffs' state law claims arise under the Medicare Act. These claims recharacterize previous claims the Court found were subject to the Medicare Act's exhaustion requirement. Waiving the exhaustion requirement is not appropriate. The Medicare Act thus deprives the Court of jurisdiction to hear these claims. The Court grants Defendants' Rule 12(b)(1) motion.

## III.   Remand or Dismissal

Plaintiffs argue that even if the Court concludes it lacks jurisdiction, the case should be remanded, not dismissed. (Opp'n 17:2–4.) "Ordinarily, when a district court concludes that it lacks subject matter jurisdiction over an action removed to federal court, the appropriate remedy is to remand the case to state court." *Glob. Rescue Jets*, 30 F.4th at 920 n.6 (citing 28 U.S.C. § 1447(c). The Ninth Circuit recognizes a "narrow 'futility' exception to this general rule." *Id.* A court may "dismiss an action rather than remand it if there is 'absolute certainty' that the state court would dismiss the action following remand.'" *Id.* (citing *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1197–98 (9th Cir. 2016)); *see also Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179, 1190 (9th Cir. 2022) ("Our precedent thus continues to recognize the futility exception.").

In *Global Rescue Jets*, the Ninth Circuit held this exception applies in the Medicare exhaustion context "because 'the federal law that deprives the federal court of

jurisdiction also deprives the state court of jurisdiction.'" 30 F.4th at 920 n.6. Therefore, a state court "would be compelled to dismiss" an unexhausted Medicare action following remand because the plaintiffs must first exhaust their administrative remedies "and because any ensuing judicial action would have to be brought in federal district court." *Id.* (citing 42 U.S.C. § 405(g)). That reasoning applies with equal force here. The Court will dismiss this action under the futility exception instead of remanding it to state court.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion to Remand (ECF No. 7). In addition, the Court **GRANTS** Defendants' Motion to Dismiss (ECF No. 8). This case is **DISMISSED** without prejudice. *See Kelly v. Fleetwood Enters., Inc.*, 377 F.3d 1034, 1036 (9th Cir. 2004) (providing a dismissal based on lack of subject matter jurisdiction should be without prejudice); *see also Glob. Rescue Jets*, 30 F.4th at 920 n.6 (invoking futility exception to remand).

Further, in light of the Court dismissing this action, the Court **TERMINATES AS MOOT** the Government's Motion to Intervene and Stay (ECF No. 9). Finally, after these motions were briefed, Plaintiffs' counsel filed a motion to withdraw. The Court similarly **TERMINATES AS MOOT** this request (ECF No. 19) given the Court's jurisdictional ruling. *See Valdez v. Am. Funding*, No. 10-CV-2292-LHK, 2010 WL 3464298, at *3 (N.D. Cal. Aug. 31, 2010).

The Clerk of Court shall enter judgment dismissing this action without prejudice and close the case.

**IT IS SO ORDERED.**

DATED: June 2, 2023

Hon. Cynthia Bashant
United States District Judge